BENJAMIN BURNS, ET UX. *v.* WILLIAM THOMAS BINES, ET AL.

[No. 5, October Term, 1947.]

*Decided November 3, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Robinson & Fahey* and *Edward D. Higinbothom* for the appellants.

*Robert H. Archer, Jr.,* with whom were *Robert H. Archer* and *Tydings, Sauerwein, Archer, Benson & Boyd* and *T. Leo Sullivan* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by the maternal grandparents of a child, Edward Roland Bines, Jr., from an order in a

*habeas corpus* proceeding giving custody of the child to his paternal grandparents. The paternal grandparents filed the petition for the writ against the maternal grandparents, alleging that the child and his two sisters were "unlawfully detained in the custody of the defendants." After the testimony had been taken and the case argued and submitted the father of the children, who is imprisoned under sentence for life for the murder of the mother, his wife, was on his petition made a "party plaintiff." He prayed that the custody of the children be given to his parents "during the time he is confined to the Maryland Penitentiary." The court, by order dated January 29, 1947, gave custody of the daughters to the maternal grandparents and of the son to the paternal grandparents.

The father killed the mother on November 8, 1945. They had three children, Genevieve, born September 18, 1942, Judith (who has died pending this appeal), born November 24, 1943, and Edward, born March 24, 1945. At the time of the murder the husband, wife and children were at their own house. The children were then brought to the paternal grandparents' house. The lower court says: "Soon thereafter the maternal grandparents appeared at the home of the paternal grandparents, and over their objections and against their wishes removed all the children therefrom, and continuously thereafter to the day of this hearing have denied [them] any and all access to or communication with said children. * * * The testimony in this case proves rather conclusively that both the paternal and maternal grandparents are solid and respectable citizens and that, in the home of either, the children will be well cared for and receive all reasonable moral training and education."

Appellants contend (1) that the court was without jurisdiction because (*a*) sections 20 and 21 of Article 42 of the Code were specifically repealed by section 5 of Chapter 797 of the Acts of 1945 and (*b*) the court has no such jurisdiction under sections 1, 2 and 3 of Article 42 or under the common law. Motion to dis-

miss the proceedings on these grounds was overruled. The court held, and appellees contend, that the court had jurisdiction under the common law and sections 1, 2 and 3. Sections 20 and 21 were indeed specifically repealed. *Cockerham v. Children's Aid Society,* 185 Md. 97, 102, 103, 43 A. 2d 197.

The common law writ of *habeas corpus* was "a writ in behalf of liberty," to deliver a prisoner from unjust imprisonment and illegal and improper restraint. It was not "calculated to try the rights of parents and guardians to the custody of infant children," but was frequently used when children were detained from their parents or guardians on the ground that such detention from legal custody was equivalent to illegal restraint and imprisonment. *People ex rel. Pruyne v. Walts,* 122 N. Y. 238, 241, 25 N. E. 266. A child cruelly treated by its father could, on *habeas corpus* against the father, be released from such illegal restraint. *Archer's Case,* Fortescue 196, 1 Ld. Raymond 673. Ordinarily the person illegally restrained, including a child old enough to choose, could only be set free from illegal restraint, and not delivered over to the custody of any particular person. *Rex v. Smith,* 2 Strange 982, *habeas corpus* by the father against an aunt; a boy of thirteen was given liberty to go where he pleased and chose to stay with the aunt. *Matter of Waldron,* 1816, 13 Johns. 418, *habeas corpus* by the father against the maternal grandparents; it was said that the children "cannot be considered under any improper restraint." However, in *Blisset's Case,* Lofft. 748, on *habeas corpus* by the father against the mother for custody of a six months old child, Lord Mansfield said the natural right was with the father, but he being unfit, the court would take jurisdiction to determine what was best for the child. Much later it was said that before the Judicature Act, in matters of custody of young children, the common law jurisdiction, by *habeas corpus,* was exercised to determine "as between two or more persons their rights"; that this jurisdiction to determine the rights between the parties might be exer-

cised as between parents and other persons or in cases not involving the relation of parent and child; that "at common law the parent had, as against other persons generally an absolute right to the custody of the child, unless he or she had forfeited it by certain sorts of misconduct"; that proceedings might be stayed to give time for application to the Court of Chancery; but that under the Judicature Act proceedings by *habeas corpus* are governed by the same principles, based not on the right of the parent but on the welfare of the child, which had governed the "parental" jurisdiction "exercised by the Court of Chancery from time immemorial." The *Queen v. Gyngall*, [1893] 2 Q. B. 232, 238-240. At common law the father's right to custody, even as against the mother, was so nearly absolute that it was not forfeited by living in adultery, provided he maintained separate establishments for his mistress and his children. *King v. Greenhill*, 4 Ad. & El. 624, 640, 643. Lord Eldon said that the Court of Chancery had jurisdiction over the custody and maintenance of children but lacked means of exercising it (*e. g.*, by compelling payments by the father) if the child had no property under the jurisdiction of the court. *Wellesley v. Duke of Beaufort*, 2 Russ. 1, 19-21, 22, 23.

Section 85 of Article 16 of the Code (Acts of 1920, ch. 573, relating to custody and maintenance of children) "is declaratory of the inherent power of courts of equity over minors, and in the exercise thereof it should be exercised with the paramount purpose in view of securing the welfare and promoting the best interest of the children." *Barnard v. Godfrey*, 157 Md. 264, 267, 145 A. 614, 615. Perhaps this declaratory statute was passed to remove any doubt as to the power of equity courts to give custody to one person and compel maintenance by another. In Maryland, if it was ever doubted that, at law as well as in equity, the welfare of the child was paramount over the rights of the parents, any doubt was removed in 1888, Acts of 1888, ch. 79, Code of 1939, Art. 42, sec. 21, by providing that in *habeas*

*corpus* proceedings the court should be "guided by what appears to be for the best interests of such minor."

Until the repeal of section 21 of Article 42 in 1945, "the principles to be applied, the status of the parties, and the thing to be done [were] the same" in equity proceedings under Art. 16, sec. 85, and in *habeas corpus* proceedings under Art. 42, sec. 21. *Kartman v. Kartman*, 163 Md. 19, 21, 161 A. 269, 270. Jurisdiction in *habeas corpus* proceedings under Art. 42, sec. 21, was "coextensive with that of courts of equity" under Art. 16, sec. 85, or (in divorce cases) under Art. 16, sec. 41, Acts of 1841, ch. 262 and amendments. These multiple jurisdictions involved inconveniences. *De Angelis v. Kelly*, 184 Md. 183, 186, 187, 40 A. 2d 332.

The purpose and effect of the repeal of section 21 of Article 42 was to abolish a duplicate jurisdiction, not to change the substantive law or to create any new or revive any old jurisdiction at variance with section 21. Prior to the enactment of section 21, "minors were, of course, subject to the application of the writ of *habeas corpus*, just as are all other persons, with respect to the legality of their custody and control." *De Angêlis v. Kelly, supra*, 184 Md. at page 185, 40 A. 2d at page 333. We may assume that even in non-criminal cases they are still subject to such application of the writ under the common law, or under section 3 of Article 42 if "any person committed, detained, confined or restrained from his lawful liberty within this State for any alleged offense or under any color or pretense whatsoever" and the similar language in section 2 of Chapter 125 of the Acts of 1809 are not limited, like the somewhat narrower language of the *habeas corpus* act of 31 Car. II, c. 2, to persons committed for criminal charges: "all other cases of unjust imprisonment being left to the *habeas corpus* at common law." *Blackstone's Commentaries*, Vol. III, pp. 136, 137.

In the case at bar, as was said in *Matter of Waldron, supra*, the children "cannot be considered under any improper restraint." The case is a contest for custody between two sets of grandparents, both found to be fit

custodians. Grandparents have no "right" to custody; in these domestic tragedies they unfortunately have only burdens and responsibilities which they assume on account of the parents' misconduct or misfortune. The proper jurisdiction over such a contest is not at law, by *habeas corpus,* but in equity under Art. 16, sec. 85.

We are informed that the order separating these children has already been carried out. As the court found no unfitness of either grandparents and no danger to the welfare of the children, it is unfortunate that the possibility of two changes of custody was not avoided by staying the order pending appeal. These children must not unnecessarily be made a football for further jurisdictional contests. This case, which was improperly brought at law, could have been properly brought in equity in the same court before the same judge. If found meritorious, it could have been removed from law to equity. Art. 75, sec. 124. We should, therefore, pass upon the merits as if the case had been so brought or removed and should not require a new suit in equity.

We accept the lower court's findings of fact and its view of the evidence, but we are unable to concur in its conclusion. Regarding the disposition of the case the court says: "As I have stated before, the hearing in this case satisfies me that these children will be well cared for in the home of either of the grandparents. That being true, I think that the natural claims of both sets of grandparents, regardless of the strict legal questions, should be considered. It has been represented to the Court that the petitioners in this case will be entirely satisfied with, and request, only the custody of Edward Roland Bines, Jr. The other two children—Genevieve Lee Bines and Judith Marie Bines—are now slightly more than four and a half and three and a half years old respectively. I, therefore, believe that a perfectly equitable, just and proper adjustment of the differences between the grandparents in this case will be that the care and custody of the two girls—Genevieve Lee Bines and Judith Marie Bines,—be placed with the maternal grandparents, the respondents,—Mr. and Mrs. Benjamin Burns; and

that the care and custody of Edward Roland Bines, Jr., who is now nearly two years old, having been born on March 24, 1945, be placed with the paternal grandparents, Mr. and Mrs. William T. Bines,—I will sign an order accordingly."

This is a humane attempt to reconcile irreconcilables, *viz.*, the welfare of the children and the wishes of the warring grandparents. It is an unworkable modification of Solomon's judgment by dividing three (now two) children instead of one. This cannot be done with due regard for the welfare of the children. Their mother being dead and their father worse than dead, it is essential that they be not deprived of each other's companionship, which (in view of the differences in ages between grandchildren and grandparents) offers the best hope of long continuance. *Cf. Kartman v. Kartman*, 163 Md. 19, 26, 161 A. 269. Lord Eldon refused to separate boys from a girl by leaving the sons with the father, who was unfit to have custody of the daughter. *Wellesley v. Duke of Beaufort, supra*, 2 Russ. 42.

*Order reversed, with costs.*

Supplemental opinion filed *Per Curiam:*

Appellants have filed a petition alleging that appellees have refused to deliver the child to them, on the ground that the decision of this court did not specify where custody of the child should be, and the lower court will not issue any order in the instant case concerning the custody of the child but has suggested that an action may be brought in equity. As the petition has been filed after expiration of the time for motion for reargument and after issuance of the mandate, we cannot modify our judgment of reversal. In view of the unusual circumstances we will, however, amplify our opinion in the hope of bringing this case to an end.

Appellees' ground for refusal to deliver the child is frivolous and calls for no explanation of our decision beyond a categorical statement that appellants should

have custody of the child. If appellees fail to comply with our decision the lower court has the power and duty to compel them to do so without new custody proceedings.

Appellees obtained custody solely by an order which has since been reversed and is now a nullity: *Green v. Stone,* 1 Har. & J. 405; *Owings v. Owings,* 10 Gill. & J. 267. Their custody is now unlawful. In cases regarding money or other property, it is a general rule (with exceptions not now material) that "what has been lost to a litigant under the compulsion of a judgment shall be restored thereafter, in the event of a reversal, by the litigants opposed to him, the beneficiaries of the error". *Atlantic Coast Line v. Florida,* 295 U. S. 301, 309, 310, 55 S. Ct. 713, 716, 79 L. Ed. 1451; *Green v. Stone, supra; Owings v. Owings, supra.* We see no difference in principle in this custody case. Of course, appellants have no rights of their own to the child but under our decision they represent the welfare and rights of the child. "If the judgment is reversed, it is the duty of the court to restore the parties to their rights". *O'Hara v. Mac-Connell,* 93 U. S. 150, 154, 23 L. Ed. 840; *Erwin v. Lowry,* 7 How. 172, 184, 12 L. Ed. 655. The power is inherent in every court to undo what it had no authority to do originally, and in which it, therefore, acted erroneously, and to restore, as far as possible, the parties to their former position. The restitution does not depend upon the question whether or not the court rendering the judgment reversed acted with or without its jurisdiction. Restitution may be enforced in a new action, *e. g.,* for money had and received. *Green v. Stone, supra; Bank of the United States v. Bank of Washington,* 6 Pet. 8, 17, 8 L. Ed. 299, or in a summary proceeding. *Northwestern Fuel Co. v. Brock,* 139 U. S. 216, 220, 11 S. Ct. 523, 35 L. Ed. 151. See also *Restatement, Restitution,* sec. 74, Comment a; Comment b, Illustration (1); *Chesapeake & Curtis Bay R. Co. v. Richfield Oil Corporation of New York,* 180 Md. 192, 23 A. 2d 677. As we have already indicated, in the instant case a rehearing of the question of custody is not requisite or pertinent to restitution pursuant to the decision of this court.