RAIBLE *v.* RAIBLE

[No. 302, September Term, 1965.]

588

*Decided May 27, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Maurice C. Pincoffs, Jr.* for appellant.

*Samuel B. Groner,* with whom was *Beverly Anne Groner* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This case involves the custody of two boys, now 13 and 12 years of age. The father, the appellant Charles G. Raible, and the wife, the appellee Vera Raible, were married in Bethesda, Maryland in 1951. They were divorced by a Florida court in February 1961. In June of that year the parties consented to a decree passed by the Florida court, under which their sons were awarded to the custody of the mother, with visitation rights to the father, including the right of the father to temporary custody for two months in the summer of each year. The consent decree also provided for a substantial payment to the wife, with alimony of $1000 a month and payments of $200 a month for support of each of the children. The father, who has a distinguished career as a Naval officer in both World Wars and is a man of great wealth, has remarried and lives in Lexington, Kentucky. The wife, born in Brazil, now lives with her mother and two children in Chevy Chase, Maryland.

In February 1964, the appellant brought suit against the ap-

pellee in the Circuit Court for Montgomery County praying that her custody of the boys be terminated and that the custody be awarded to him. The bill alleged immoral conduct on the part of the appellee which, the appellant claimed, rendered her unfit to have the children's custody. Voluminous testimony was taken in a six-day trial before Judge Anderson. The Judge analyzed the testimony and gave his conclusions in a comprehensive opinion in May 1965. He awarded the custody of the boys to the appellee, continued the appellant's rights of visitation, and ordered the appellant to pay arrearages in support, alimony and property settlement accrued under the Florida decree, and to provide security for the fulfillment of his obligations.

In this appeal, the father contends that the lower court was clearly wrong in continuing the custody of the children in the mother; that the court erred in admitting testimony relating to the lives of the parties prior to the Florida decree; and that the court did not have the power to make the appellant's rights of visitation dependent on his performance of the financial obligations imposed upon him by the decree. These contentions will be considered seriatim..

## I

The appellee frankly and remorsefully admits that, after the divorce, she had an illicit affair from December 1961 to early in 1963. The Chancellor found as a fact, and, indeed, the appellant virtually concedes, that the relationship was terminated completely in the late spring of 1963 and has not been resumed. Since that time, there is voluminous and uncontradicted testimony that the appellee has led an exemplary life. She is now employed part-time at the Brazilian Embassy and the Chancellor noted that she and her mother have many friends, both in the Embassy and in the community.

Judge Anderson made findings of fact and gave his conclusions as to what seemed to be in the best interests of the children, with respect to their custody, as follows:

> "The uncontradicted evidence discloses that the defendant has been a kind and affectionate mother to the children and that she loves them very much, and they

in return love her. Even during the time that she and
[her paramour] were carrying on an illicit relation-
ship, the children were well cared for, and all of the
testimony other than that of the plaintiff reveals that
they are happy, normal little children who are well
taken care of by their mother and grandmother.

* * *

"In this case the defendant is now 40 years of age.
The children have been in her custody since birth, save
for the visits they have made to their father in Lex-
ington, Kentucky, since the divorce. These visits do
not appear to have been too pleasant or too satisfactory
* * * While the defendant has sought to comply with
the terms of the consent decree and arrange that the
children visit with their father during the summer
months, as therein provided, in the summer of 1963
the father, in defiance of the judgment and decree,
refused to return the children to their mother, and even
went so far as to secrete them from the Kentucky
Court by placing them in a school in the State of Ohio,
where the wife was compelled to obtain their custody
through legal proceedings. He now seeks to have this
Court take the children from the custody of their
mother and award their custody to him because of an
unfortunate affair engaged in by his former wife, the
defendant, following the granting of the divorce when
she was in a country other than that of her birth
and without friends. The plaintiff is 67 years of age
and is now married to his third wife. He is a man of
great wealth and, without a doubt, can supply his chil-
dren with every luxury. In his testimony he states
that in his opinion the children need the strictest of
discipline, and if they are awarded to him he plans to
place them in a military school. From his testimony it
would appear that the children would be away in
school, both winter and summer, beginning with the
coming summer, when he would send them to Culver
Military Academy. When asked if he were awarded
custody they (the children) would be away from home

all the regular school year and every summer session and would be at home only at other times, he replied: 'Eventually that will be the case, as with all boys. I did the same thing. I went away summers.' He stated that that was his plan when they reach the ages of 13 and 14. While this Court realizes the desirability of children attending good private schools when their parents can afford it, the Court also realizes the desirability of children of their ages being raised in a normal home, where they will receive love and affection. The defendant offered in her behalf a number of substantial witnesses; all of whom testified that the home where the children were now living was a comfortable, modern home; that the children had excellent manners and that they were happy, nice little children being properly brought up. It would appear to this Court that the plaintiff chiefly desires these children to perpetuate his name and take the place of two sons by a former marriage who are now deceased.

\* \* \*

"\* \* \* Here, the testimony was taken before the Chancellor in open Court, and every opportunity was had by the Court to see and observe all of the witnesses. On one side you have love and affection; on the other side you have a vast preponderance of the material things of life in the form of great wealth. It is difficult for this Court to believe that if the plaintiff is awarded the custody of these children that they would receive the same love and affection that they now receive in their present home or that boarding school at their ages would be better for them than home life. The plaintiff testified that he felt it would be best for the children that the Court order them to be sent to boarding school where both parents could visit them at will rather than have them remain in the custody of their mother. At the time of the filing of the suit February 8, 1964, the children were 11 and 10 years of age. They would now be 12 and 11 years of age. Eventually, as they grow older, they should go

"to private school, if the plaintiff so desires, and later to college, at which time they themselves can decide which parent they prefer to live with. The children were not called upon to testify and the Court refused to talk to them privately in chambers on any matters regarding their custody, as both parties could not agree that this should be done. However, after the taking of all the testimony, the Court did, with the consent of the parties, have the children visit with him briefly, and found them to be happy, attractive and wholesome little boys, well dressed, with excellent manners."

This Court has consistently emphasized the vital role of the Chancellor who hears a custody case; unless there is some reason to the contrary, his finding will not be disturbed. *Andrews v. Andrews,* 242 Md. 143, 154, 218 A. 2d 194 (1966) and cases therein cited. In this case, the record amply supports the Chancellor's findings of fact and his conclusion.

No question of adultery is involved. The period of misconduct of the wife took place after her divorce and terminated two years before the hearing below. As Judge Hammond said for the Court in *Trudeau v. Trudeau,* 204 Md. 214, 218, 103 A. 2d 563 (1954), "no custody matter is the image of another and in none can the proper paths be plotted automatically on a map of the principles laid down by the cases." See also *Daubert v. Daubert,* 239 Md. 303, 308, 211 A. 2d 323 (1965). The paramount, overriding consideration is the welfare of the children. In *Trudeau,* as here, the wife had ceased the conduct which was the basis for the attack upon her fitness, and the conclusion of the Chancellor that the mother's custody of the children should be continued (subject, always, to the continuing jurisdiction of the court) was affirmed. We found in *Trudeau,* as we find here, that there was no compelling reason which made the continuation of the mother's custody not in the best interests of the children.

The appellant contends that the fact the appellee misconducted herself in the house in which the children were living of itself shows her unfitness as their custodian. That conduct might well have been determinative as of the time it took place, but the basis of the Chancellor's award is that the appellee has

changed and is now a fit mother in every respect. As the Court pointed out in *Trudeau,* custody should not be denied as punishment for wrongdoing in the past.

The appellant argues that if he had filed his suit while the appellee's misconduct was continuing, the result of the hearing would necessarily have been different. It was during the interval between the appellant's discovery of the appellee's misconduct and the institution of his suit that the appellant defied the mandate of the Kentucky court and endeavored to secrete the children in Ohio. He testified that he felt he should take care of his children and "no process of the court would stop me." In any event, the determinative factor in a custody proceeding is what appears to be in the welfare of the children at the time of the hearing. It is their future which is involved; the past is of interest only to the extent to which it may illumine the path which lies ahead. It is true that the lapse of time may have prejudiced the appellant's chances of success in the litigation, but a custody case is not a contest to be won or lost by the timing of the moves of the parental adversaries. In the larger viewpoint, the interval enabled the appellee to pull herself out of the spiritual morass into which she had sunk, and it is her rehabilitation which the Chancellor found to be determinative in deciding what was best for her children.

## II

The appellant contends the lower court was in error in admitting into evidence testimony as to his conduct prior to the 1961 Florida divorce decree. That decree, he argues, fixed the rights of the parties as to custody as of that time and was *res judicata* as to events which happened before; only evidence as to matters and conduct thereafter, he submits, was admissible.

Judge Anderson, in his opinion, referred to the testimony to which the appellant objects. While married to his first wife, the appellant had an affair with another woman, by whom, the Judge said, there was strong evidence he had two illegitimate children. "The plaintiff", in the words of the Judge, "cannot be said to have led an ideal, moral life."

The evidence was admissible, not to show whether the Florida

consent decree was right or wrong, but to show some of the past history of the parties insofar as that history might aid the court in appraising their present characters and fitness as custodians. *Miller v. Miller,* 15 Wis. 2d 583, 113 N. W. 2d 403 (1962).

In determining to whom custody should be awarded, courts take into consideration all of the evidence bearing on the question. *Oliver v. Oliver,* 217 Md. 222, 229-30, 140 A. 2d 908 (1958). See also *Snow v. Watson,* 240 Md. 712, 713-14, 213 A. 2d 748 (1965). The more remote in time the events referred to, the less light they may cast on present character, but that consideration goes to the weight of the testimony, not its admissibility.

*Naylor v. Naylor,* 217 Md. 615, 143 A. 2d 604 (1958), relied upon by the appellant, is not apposite. There the Court held that a Nevada divorce decree which awarded the wife custody of the children was invalid because the court was without jurisdiction. Judge Horney, for the Court, said that even if it were assumed the Nevada court had jurisdiction to award custody to the wife, that decree was only *res judicata* as to the conditions which existed at the time of the decree and the court of another state in which the children are domiciled may examine subsequent facts as to the present fitness of a parent to have custody. Here, the parties consented to the Florida decree which gave custody of the children to the wife, and no attempt has been made to set that decree aside. The litigation here involved only concerns the question of which parent should have custody at the present time, and in that determination the court's consideration of past events which may or may not have molded present character has no arbitrary time limit.

In any event, the Chancellor's opinion makes it evident to us that he regarded the testimony to which objection was made as only cumulative to the evidence as to present circumstances, and that he chiefly relied upon his own appraisal of the parties who were before him.

We find the appellant's contention on this matter to be without merit.

### III

The decree appealed from contains various provisions im-

posing upon the appellant the duty to pay his arrearages under the Florida decree in the total amount of $38,750, and ordering him to continue the alimony and support payments therein provided, including the payment of $400 each month for the support of the two children. Paragraph 7 orders the appellant to pay $1,100 for depositions and court costs incurred by the appellee. Paragraph 8 orders the appellant to deposit $25,000 in cash or securities to assure the return of the children to the appellee, unless their domicile is changed to Brazil, and Paragraph 9 orders the appellant to deposit $75,000 in cash or securities to assure the timely payment of all his financial obligations under other provisions of the decree. Paragraph 2 sets forth the appellant's rights of visitation but provides that these rights shall be exercised by him only after he has complied with the terms of the decree.

The appellee alleges, and the appellant does not deny, that these provisions of the decree were agreed to by counsel in the court below, as a result of conferences, and were included in the decree by consent.[1] He does not object to the provisions as to the payments of arrearages and the deposits of cash and securities to be made by him as security. He contends, however, that, despite any consent given by him in the court below, the clause in Paragraph 2 of the decree making his visitation rights conditional upon his prior fulfilment of the financial obligations imposed upon him by other provisions of the decree was beyond the power of the court and that the appellant's

1. While this appeal was pending, the appellee filed a motion under Maryland Rules 835 b (1) and 826 e that the appeal be limited to the provisions of the decree awarding the appellee custody and setting forth the appellant's visitation rights, on the ground that the rest of the decree was by consent of the parties, and that the appellant's objection thereto was raised for the first time in this appeal. An affidavit of the appellee's counsel was filed with the motion setting forth the details of the negotiations which led to the consent. The appellant filed an answer to the motion in which he did not deny that the provisions of the decree referred to were inserted with the consent of the parties, but claimed that any consent thereto on the part of the appellant was void and of no effect. The Court denied the appellee's motion on September 16, 1965.

consent thereto is void and of no effect. He argues that the right of a parent to visit his children cannot be waived by agreement.

The appellee contends that the appellant has no standing in the Court to object to the conditions imposed upon his visitation rights because of his consent thereto in the court below. We do not reach this question, however, for we find unsound the appellant's contention that the provision in question was beyond the power of the lower court to make and against public policy.

The right of a parent whose child is placed in the custody of another person to visit the child at reasonable times is an important one, but not absolute. If it is clearly shown to be for the best interests and welfare of the child, either parent may be denied the right of access. See *Radford v. Matczuk,* 223 Md. 483, 488, 489-90, 164 A. 2d 904 (1960) and authorities therein cited. Judge Horney, for the Court, pointed out in *Radford* that, even though custody was denied, the Court has never had occasion to deny the right of visitation to an errant parent, but the observation goes only to the kind of evidence required in such denial of visitation, not to the power of the court to terminate all visitation rights, where that action is deemed necessary for the child's welfare.

Reasonable conditions imposed upon the right of visitation have been upheld by other courts on review; in some cases the decision of the trial court in imposing conditions was held to have been erroneous, but lack of judicial power was not involved. Numerous cases on the matter are collected and analyzed in Annot.—*Violation of custody or visitation provision of agreement or decree as affecting child support payment provision, and vice versa,* 95 A.L.R.2d 118, 162-65 (1964).

Here, the appellant's repeated failures to comply with the payment provisions of the Florida decree were not controverted. The Kentucky court twice held him in contempt for refusal to obey its orders. The appellant is the beneficiary under a spendthrift trust of $3,500,000; his "tax-free" income, after payments to his first divorced wife, is approximately $60,000 a year. He and his present wife live in a $250,000 home, title to which is in his wife's name. The appellant, properly, does not

contend that the payment of the approximately $140,000 provided for in the decree is beyond his means.

The welfare of the children is involved. They are financially dependent upon the payments for their support, and their welfare may be adversely affected if their mother is subjected to unnecessary economic worry. The condition upon their father's rights of visitation does not mean they will be deprived of contacts with him, for it is not contended that he cannot comply with the condition. Under all the circumstances, if the reasonableness of the condition were before us, we should have no hesitancy in affirming the Chancellor's order, and in any case, the imposition of the condition was within his judicial power.

*Decree affirmed; costs to be paid by appellant.*