LARRY G. STANCILL *v.* BETTE H. STANCILL

[No. 22, September Term, 1979.]

*Decided December 13, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Charles G. Page* and *Peter Parker,* with whom were *White, Page & Lentz* on the brief, for appellant.

*Ronald J. Miller,* with whom were *Bregel & Bregel, Chartered* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This dispute lies at the interface of both the interests of children and the duties and rights of their parents, pursuant to agreement, decree and statute. Specifically, the issue presented is, when both alimony and visitation are provided for in the divorce decree, may an ex-husband interpose his former wife's interference with his right to visit his child as a defense to a contempt citation for nonpayment of alimony?

The parties to this appeal were divorced *a vinculo matrimonii* by the Circuit Court for Harford County on December 23, 1976, twenty years after their marriage. The decree, which incorporated a written agreement between the parties entered into on November 5, 1976, established that custody of their two children be divided between them — the appellant Larry G. Stancill retaining custody of David, and appellee Bette H. Stancill of their daughter, Stacey — each subject to specified rights of visitation of the other parent.[1]

---

1. The agreement which was incorporated by reference into the decree specified in substantial detail the days and times for the father to have visits with his daughter, and further provided by item Seventh (f):

> The Wife shall put no obstacle in the way of the maintenance of love and affection between the children and the Husband or in the way of a reasonable and proper companionship between them; nor shall the Wife do anything to estrange the children from the Husband. This provision shall also apply in every respect to the Husband.

The decree further provided that $150 per week be paid by the appellant to the appellee as "permanent non-modifiable alimony," and that he also pay $40 weekly to his ex-wife for the support and maintenance of Stacey.

On November 10, 1977, the appellee filed a petition in the divorce action seeking to have the appellant adjudged in contempt for failure to make the alimony payments provided for in the decree. At the hearing, the appellant attempted to defend by eliciting testimony concerning the appellee's alleged interference with his visitation privileges as well as the alienation of his daughter's affections for him, both as provided for in the agreement and divorce decree. Mr. Stancill supported this proffer by maintaining that impeding his right to companionship with his daughter constituted bad faith on the part of his former wife so that the equitable doctrine of "clean hands" applied to bar her from enlisting the aid of the equity court to enforce the monetary portion of the decree. The chancellor excluded this proffered testimony on the ground that it was irrelevant to the issue whether the appellant's support payments were in arrears. After determining that Mr. Stancill was in default in the amount of $2,600, the court entered a judgment in that amount in favor of the ex-wife, but dismissed her contempt petition. Mr. Stancill appealed that ruling to the Court of Special Appeals, which affirmed the order of the circuit court. *Stancill v. Stancill*, 41 Md. App. 335, 397 A.2d 218 (1979). It concluded that upon the incorporation of a separation agreement into a divorce decree, the covenants, as a matter of public policy, cease to be, if they formerly were, mutually dependent, and therefore, noncompliance with the decree by one party does not constitute a defense to an action to enforce the decree by the other. *Id.* at 338, 397 A.2d at 221. We granted certiorari.

Initially, the appellant argues in this Court that the covenants contained in the separation agreement, guaranteeing him reasonable visitation with his daughter, on the one hand, and providing for permanent nonmodifiable alimony to his former wife, on the other, are mutually dependent when viewed in light of ordinary contract principles. He then asserts that the incorporation of the

agreement into the divorce decree did not change the dependent nature of the two covenants; thus, in the appellant's view, Mrs. Stancill's material breach of the one provision of the decree constitutes a defense to any legal action by her to enforce the other. We find it unnecessary to address these contentions since we determine that regardless of what may normally result from the incorporation of a separation contract into a decree of divorce, where a provision relating to the custody, maintenance, visitation, care or support of a child is involved, the public policy of this State requires that, in the absence of ambiguity, such items be treated as independent provisions of the contract or decree.

We begin our analysis by noting our decision in *Seltzer v. Seltzer,* 251 Md. 44, 246 A.2d 264 (1968) (per curiam), referred to neither by the intermediate appellate court, nor cited by either party, which we believe is dispositive of the case now before us. There, this Court, when faced with the same claim that the appellant asserts here, denied the father's request to be relieved of his decretal child support and alimony obligations because of his ex-wife's nonconsensual removal of their children from the State, thus effectively denying him his visitation privileges established by the divorce decree. *Id.* at 45, 246 A.2d at 265. The premise of that result was that the father's obligation for support was not conditioned on whether he could visit his children, but only on what was in the children's best interests. In light of the fact that this Court's opinion in *Seltzer* does not state in any detail a rationale for the conclusion, we now further explain the law and considerations that factor into the denial of the availability of such a defense.

Under section 3-602(a) of the Courts Article of the Maryland Code (1974, 1979 Cum. Supp.), which we have held to be declaratory of the common law, *e.g., Price v. Price,* 232 Md. 379, 384, 194 A.2d 99, 102 (1963); *Barnard v. Godfrey,* 157 Md. 264, 267, 145 A. 614, 615 (1929), courts of equity are granted jurisdiction over minors in these words:

§ 3-602.  Custody, guardianship, maintenance and support of child.

(a)  Jurisdiction of courts of equity. — A court of

equity has jurisdiction over the custody, guardianship, legitimation, maintenance, visitation and support of a child. In exercising its jurisdiction, the court may:

(1) Direct who shall have the custody or guardianship of a child;

(2) Determine the legitimacy of a child, pursuant to § 1-208 of the Estates and Trusts Article of this Code;

(3) Decide who shall be charged with the support and maintenance of a child, pendente lite or permanently;

(4) Determine who shall have visitation rights to a child; or

(5) From time to time set aside or modify its decree or order concerning the child. [Md. Code (1974, 1979 Cum. Supp.), Courts Art., § 3-602(a).]

As is evident from this section, the equity courts of this State have plenary authority to determine questions concerning the welfare of children within their jurisdiction, and such power does not terminate once custody, support and visitation rights have been established by the decree. *Id.* § 3-602(a)(5); *see, e.g., Ross v. Hoffman,* 280 Md. 172, 174, 372 A.2d 582, 585 (1977); *Monticello v. Monticello,* 271 Md. 168, 175-76, 315 A.2d 520, 524 (1974), *cert. denied,* 419 U.S. 880 (1975); *Price v. Price, supra,* 232 Md. at 383, 194 A.2d at 101; *accord, Kicherer v. Kicherer,* 285 Md. 114, 118-19, 400 A.2d 1097, 1100-01 (1979) (court which establishes guardianship has continuing duty to monitor); *Glading v. Furman,* 282 Md. 200, 208, 383 A.2d 398, 403 (1978) (continuing personal jurisdiction over parent absent from State). For time beyond memory, the public policy of this State has required that, when exercising this authority, the court's paramount concern be to secure the welfare and promote the child's best interest. *E.g., Glading v. Furman, supra; Burns v. Bines,* 189 Md. 157, 162-63, 55 A.2d 487, 489 (1947); *Barnard v. Godfrey, supra,* 157 Md. at 267, 145 A. at 615; *Hill v. Hill,* 49 Md. 450, 457, 33 Am. Rep. 271, 276 (1878).

The primacy of the interests of the child was explicitly advanced by the General Assembly's enactment of section 28 of Article 16 of the Maryland Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), which states in part:

§ 28. Effect of agreement and settlements between parties.

Any deed or agreement made between husband and wife respecting alimony, support, maintenance, property rights, or personal rights, or any settlement made in lieu of alimony, support, maintenance, property rights or personal rights shall be valid, binding and enforceable to every intent and purpose, and the deed or agreement may not be a bar to an action for divorce, either a vinculo matrimonii or a mensa et thoro, as the case may be, whether the cause for divorce existed at the time or arose prior or subsequent to the time of the execution of the deed or agreement, or whether at the time of making the deed or agreement the parties were living together or apart. However, *whenever any deed or agreement shall make provision for or in any manner affect the care, custody, education or maintenance of any infant child or children of the parties, the court has the right to modify the deed or agreement in respect to the infants as to the court may seem proper, looking always to the best interests of the infants.* [Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 16, § 28 (emphasis added).]

Section 28, and the decisions of this Court, make it quite clear that the chancellor cannot be handcuffed in the exercise of his duty to act in the best interests of a child by any understanding between parents. *E.g., Glading v. Furman, supra; Tvardek v. Tvardek,* 257 Md. 88, 97, 261 A.2d 762, 767 (1970). Implicit in the principle that a court, looking to the best interests of an infant, may modify the terms of an agreement that "in any manner affects the care, custody, education or maintenance of any infant child or children of the parties" is that any such provisions are to be accorded separate and

distinct treatment from other items contained in the compact. We conclude, therefore, that section 28 of Article 16 and section 3-602 of the Courts Article, evince a public policy that provisions relating to children, whether they be decretal or contractual, not be treated as being dependent on other matters involved in a marital dispute.

What we have just said has been applied many times, within this State as well as in others, as it concerns provisions of an agreement or decree which directly pertain to the relationship of children and their parents. *See, e.g., Seltzer v. Seltzer, supra; Radford v. Matczuk,* 223 Md. 483, 489, 164 A.2d 904, 907 (1960) (father may be denied right of visitation if best interests of child endangered); *Zouck v. Zouck,* 204 Md. 285, 300, 104 A.2d 573, 579-80 (1954) (court not bound by agreement establishing amount of child support); *Melson v. Melson,* 151 Md. 196, 206-07, 134 A. 136, 140 (1926) (same); Annot., 95 A.L.R.2d 118 (1964). A review of the decisions in our sister courts reveals that many of them have also denied the use of one parent's breach of the visitation privilege as a defense in an action based on arrearages of child support payments. *See* Annot., 95 A.L.R.2d, *supra,* § 3, at 122-26. The primary concern of those courts faced with a retention of child support by the father in response to a denial of visitation rights by the mother is that the custody of the children should not be treated as a property right of parents. Thus, most courts will not permit a child to suffer unnecessarily from a dispute between his parents by the denial of the support upon which he survives. In *Mallinger v. Mallinger,* 197 Pa. Super. 34, 175 A.2d 890 (1961), for example, it was stated:

> A mother may not bargain away the right of the children of the marriage to adequate support from the father. . . . "If the collateral agreement for visitation rights were to be construed as interdependent with the agreement for support the parents have constructed a contract term to limit or bargain away the right of the child to support. . . . [Public policy] . . . requires the treatment of support of children and visitation rights as distinct problems. . . ." [*Id.* at 891-92 (citation omitted).]

*See*, in addition, *In re Marriage of Roesch*, 83 Cal. App. 3d 96, 147 Cal. Rptr. 586, 591 (1978), *cert. denied*, 440 U.S. 915 (1979); *Hester v. Hester*, 59 Tenn. App. 613, 443 S.W.2d 28, 31 (1968), *cert. denied*, 443 S.W.2d 28 (1969). Furthermore, we are also cognizant of a substantial body of case law that involves the analogous issue of whether visitation rights may be withheld by a court for failure of a father to pay child support. *See* Annot., 51 A.L.R.3d 520 (1973). Many courts hold that, since the paramount concern when awarding or denying the visitation privilege is the welfare of the child, and since visitation with the noncustodial parent benefits the child in all but rare instances, the nonpayment of child support, absent other circumstances, is not sufficient cause to deny companionship with the child. *See, e.g., Kane v. Kane*, 154 Colo. 440, 391 P.2d 361, 363 (1964) (en banc); *Barbour v. Barbour*, 134 Mont. 317, 330 P.2d 1093, 1097 (1958); *Commonwealth v. Lotz*, 188 Pa. Super. 241, 146 A.2d 362, 363 (1958), aff'd, 396 Pa. 287, 152 A.2d 663 (1959); *Lunsford v. Waldrip*, 6 Wash. App. 426, 493 P.2d 789, 792 (1972). In sum, the authorities make plain that the well-being of a child should not be rendered dependent on the virtuous performance of all obligations by each parent.

The present appeal, however, involves the nonpayment of wife maintenance as distinguished from child support, and consequently presents a slightly different issue for decision than that to which we have just alluded. While the detrimental effect of the withholding of child support is direct and manifest, the repercussions of the termination of spousal support as causing the child harm are not always as clear. Nonetheless, and consonant with our decision in *Seltzer v. Seltzer, supra*, it is our view that provisions granting the wife alimony or maintenance, in either a separation contract or divorce decree, are not created in a vacuum, independent of considerations that bear directly on the well-being of the child. Sixty years ago, in *Wygodsky v. Wygodsky*, 134 Md. 344, 106 A. 698 (1919), this Court stated:

> *The award or the amount of an allowance as alimony is largely within the judicial discretion and rests upon all the facts and circumstances of each case*

> having regard to "the husband's income, the estate of the wife, the age and condition of the parties, *the disposition and care of the children,* and the ability of the parties to care for themselves." [*Id.* at 347, 106 A. at 699 (emphasis added).]

More recently, in *Raible v. Raible,* 242 Md. 586, 219 A.2d 777 (1966), we explicitly recognized that the husband's failure to comply with alimony and child support payments bears directly on the welfare of children, not only because "[t]hey are financially dependent upon the payments for their support, [but also because] their welfare *may be adversely affected if their mother is subjected to unnecessary economic worry." Id.* at 598, 219 A.2d at 782-83 (emphasis added); *cf., Rand v. Rand,* 280 Md. 508, 517, 374 A.2d 900, 905 (1977) (all resources — which would include alimony — have direct bearing on amount of child support required of father). Thus, we now hold that, just as the denial of visitation privileges may not be nonjudicially enforced by the other spouse's withholding of child support, it similarly may not, without court sanction,[2] be enforced by the retention of alimony, or vice versa whether involving child support or alimony. *Seltzer v. Seltzer, supra.*

In addition to the harmful effects on children that may result from the deprivation by the husband of alimony due the wife, we are aware of more subtle, though no less potent, harm that may befall children where the breach of one provision is asserted as a defense to a proceeding claiming breach of another. It is a sad fact that a by-product of the usually painful process of marital dissolution is often anomosity and acrimony between parents following their divorce. It is not uncommon that these emotions have as their offspring post-decree actions in which the children are but pawns in a struggle in which each parent maneuvers to alter his, or to enforce the other spouse's, responsibilities under the

---

2. For examples of where the chancellor, after reviewing all the circumstances, determined that the best interests of the child required enforcement of its decree by conditioning visitation on the continuing payment of alimony and child support, *see* Raible v. Raible, 242 Md. 586, 219 A.2d 777 (1966); Townsend v. Townsend, 205 Md. 591, 109 A.2d 765 (1954). See also Annot., 51 A.L.R.3d 520 (1973).

divorce decree. Infants, and the rights and duties of parents toward them, can become weapons in the sparring of the parents, and thus the children can be victimized to an extent greater than would result solely from the disintegration of their family. *Cf. Burns v. Bines, supra,* 189 Md. at 164, 55 A.2d at 490 (in a custody dispute between maternal and paternal grandparents, the court stated that "children must not unnecessarily be made a football for further jurisdictional contests."). Children must, to the maximum extent possible, be kept clear of the cross fire of such disputes. We see no reason why a spouse should be permitted to use his denial of decretal rights or privileges, where such may affect the welfare of children, as a lever to pry from the other spouse that which can be obtained through application to the equity court. *Accord, Abreu v. Abreu,* 46 Misc. 2d 942, 261 N.Y.S.2d 687, 696 (Fam. Ct. 1965). Self-help enforcement of these important provisions subjects the interests of minors to the will, whim and bargaining of their parents, and is pregnant with the possibility of harm to their children.

Consequently, there is no reason for Mr. Stancill to resort to this self-help tactic in a case such as here. The court has already assumed jurisdiction over Stacey and has continuing authority, as well as a duty, if determined to be advisable, to modify or enforce the provisions of its decree so that her welfare is protected. Md. Code (1974, 1979 Cum. Supp.), Courts Art., § 3-602(a)(5); Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 16, § 28. Just as Mrs. Stancill invoked the court's aid to redress her complaint against her ex-husband, so too can Mr. Stancill seek that same court's aid to redress his complaint against his ex-wife. *Accord, Abreu v. Abreu, supra,* 261 N.Y.S.2d at 696.

Accordingly, we hold that the chancellor did not err when he refused to allow Mr. Stancill to defend his nonpayment of alimony by asserting the noncooperation of his former wife in providing association with his daughter in accordance with the divorce decree.

*Judgment of the Court of Special Appeals affirmed.*
*Costs to be paid by Larry G. Stancill.*