477 So.2d 1053 (1985)
The DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, On Behalf of Gladys B. Soles, Appellant,
v.
David Thomas, Appellee.
No. 84-962.
District Court of Appeal of Florida, Fifth District.
October 24, 1985.
*1054 Geraldyne H. Carlton, Lakeland, for appellant.
Mary Smith Townsend, of Townsend & Townsend, Kissimmee, for appellee.
HAMMOND, K., Associate Judge.
This is an appeal by the Department of Health and Rehabilitative Services (HRS) from an order which determined that David Thomas was not required to reimburse HRS for sums HRS had paid for the care of Thomas' son, Michael Thomas.
The marriage between David Thomas and Patsy Thomas was dissolved in 1970. Under the final decree of divorce, the father was awarded custody of the parties' four minor children. Both parties remarried shortly thereafter. In 1973, the parties agreed to have two of the children (Gladys and Brenda) move in with the mother and her new husband, and soon thereafter, these two children were legally adopted by the mother's new husband. Then, sometime in 1974 or 1975, the parties agreed to have the mother's new husband adopt the remaining children (David and Michael). Although these two children did move in with the mother and her new husband, and the father signed consent forms to have the mother's new husband adopt them, the adoption was never finalized. Then, in June, 1975, three of the children *1055 (Gladys, Brenda and Michael) moved in with their maternal grandmother, apparently because of conflicts between the new husband and these children. During this time, legal custody always remained with the father.
Both the mother and the grandmother told the father that they were financially able to take care of the children and did not need his financial assistance. However, on August 9, 1975, the grandmother applied for financial assistance under the Aid to Families with Dependent Children Program (AFDC). Beginning in November, 1975, HRS paid sums to the grandmother under AFDC. However, the father was never notified of this fact until April, 1982, when HRS requested him to reimburse them for payments made to the grandmother on behalf of Michael[1] over the previous six and one-half years. When the father refused to pay, HRS brought suit under section 409.2561, Florida Statutes, which gives HRS the right to petition the circuit court to order the "responsible parent" to reimburse HRS for public assistance payments made to, or for the benefit of, a dependent child. The trial court denied HRS' claim, however, on the ground that laches barred HRS from enforcing its rights to reimbursement.
Under section 409.2561(3), Florida Statutes, the recipient of public assistance payments on behalf of a dependent child is deemed to have made an assignment to HRS of the sums received on behalf of the child. As subrogee, HRS retains all the rights which the recipient had against the responsible parent. Thus, because the grandmother in this case was clearly entitled to accept child support payments from the father on behalf of Michael,[2] HRS became a proper party to enforce the grandmother's rights against the father. On the other hand, because HRS retained no better rights against the father than the grandmother had, the father was entitled to assert any defenses he had against the grandmother as well as any defenses he had against HRS.
We recognize that unpaid child support payments constitute a vested right in the child which will be strictly enforced absent extraordinary or strongly compelling circumstances. O'Brien v. O'Brien, 424 So.2d 970 (Fla. 3d DCA 1983); Panganiban v. Panganiban, 396 So.2d 1156 (Fla. 2d DCA 1981). However, it is clear that under Florida law, laches may serve to constitute such an extraordinary circumstance.[3]Robinson v. State, Department of Health and Rehabilitative Services, 473 So.2d 228 (Fla. 5th DCA 1985); Cartee v. Carswell, 425 So.2d 204 (Fla. 5th DCA 1983); Armour v. Allen, 377 So.2d 798 (Fla. 1st DCA 1979). We think that this is an appropriate case to justify the application of the laches doctrine.
This case is similar to the recent case of Wing v. Wing, 464 So.2d 1342 (Fla. 1st DCA 1985). In that case, the wife, who had been granted custody of the three minor children, was hospitalized for psychiatric problems for approximately one year and during that time the children were removed from the wife's custody and placed in foster homes. Upon learning that *1056 the children were no longer in the wife's custody, the father contacted the state and sought to gain custody of them. However, the father was told that he could not have custody of the children and that he had no visitation rights while the children were in foster homes. The father responded that he did not intend to continue making child support payments under those circumstances but that he would resume support payments when the children were out of the foster homes and placed back in his or his wife's custody. The state agreed to this and also agreed to notify the father at such time as the children were returned. Subsequently, the children were returned to the wife but the husband was never notified of that fact or of their whereabouts. He was unaware that they were in the wife's custody until eleven years later when the wife filed a motion for contempt and for child support arrearages under the Child Support Enforcement Program. The trial court denied the wife's motions and ruled that as a result of the action or inaction of the state of Florida and the wife, in failing to contact the husband for a period of over eleven years regarding any back child support payments, the state and the wife were barred from requiring the husband to pay any of the back child support payments under the doctrine of laches. The court did order, however, that the husband recommence making child support payments to the wife. The First District Court of Appeal affirmed, noting that the husband was prejudiced by the inaction of the state and the wife in that he involuntarily gave up his efforts to gain custody of the children on the basis of representations made by the state.
In the case at bar, the father specifically testified that he would have had the children move back in with him had he known that the children were in need of financial assistance. The misrepresentations made by the grandmother, to the effect that she was financially able to care for the children, and the failure of the grandmother and HRS to notify the father of Michael's financial needs, effectively prevented the father from exercising his custody rights under the divorce decree. Therefore, the trial court correctly ruled that laches barred the enforcement of back child support payments. As was the case in Wing, however, we believe that the father should have been required to pay child support once he was put on notice that HRS was providing financial assistance on behalf of Michael.
HRS argues, however, that regardless of the grandmother's or HRS' actions, the father in this case always had legal custody of Michael, and therefore he always had the corresponding duty to support him. In support of its argument, HRS cites Florida Dept. of HRS v. Ciferni, 429 So.2d 92 (Fla. 2d DCA 1983) and several cases from other jurisdictions which HRS claims stand for the proposition that the duty of support owed by one parent is unaffected by the other parent's interference with the first parent's custody or visitation rights. HRS fails to acknowledge, however, that these cases all involve the Uniform Reciprocal Enforcement of Support Act (URESA) which specifically excludes consideration of visitation or custody from the duty of support. See § 88.271, Fla. Stat. Apart from URESA actions, the rule in Florida has always been that interference with visitation or custody rights is the classic example of the court's power to refuse to enforce payment of past due child support. See Panganiban, supra, at 1157; Warrick v. Hender, 198 So.2d 348 (Fla. 4th DCA 1967); Denton v. Denton, 147 So.2d 545 (Fla.2d DCA 1962). In any event, we believe that whatever duty the father had to support Michael was excused by the action or inaction of the grandmother and HRS.
We note here that there has never been a proper determination of the father's ability to pay child support. Without such a determination, an award of child support cannot be upheld on appeal. Diaz v. Diaz, 418 So.2d 1064 (Fla.3d DCA 1982); Yontz v. Yorkunas, 358 So.2d 91 (Fla.2d DCA 1978). The father's mere admission on cross-examination that he "has had the *1057 ability to support these children since '75" does not sufficiently reveal the extent of that ability.
That portion of the ruling barring HRS from collecting past due child support is affirmed. That portion of the ruling barring HRS from recovering from the father any sums paid to the grandmother after the father was notified of HRS' claim is reversed and this case is remanded for a determination of the amount HRS paid to the grandmother from April, 1982 until December 1, 1984 (the day Michael Thomas turned eighteen), and the ability of the father to pay such amount.
AFFIRMED in part; REVERSED in part and remanded.
ORFINGER and UPCHURCH, JJ., concur.
NOTES
[1] HRS did not seek reimbursement from the father for funds expended on behalf of Gladys and Brenda. Presumably, this was because these two children had been legally adopted by the wife's new husband and therefore became his responsibility.
[2] The obligation to support Michael remained with the father even though a non-parent had assumed custody of Michael. See Engle v. Engle, 323 So.2d 658 (Fla.3d DCA 1975). See also Cronebaugh v. Van Dyke, 415 So.2d 738 (Fla. 5th DCA 1982), rev. denied, 426 So.2d 25 (Fla. 1983) (child's right to support must be enforced by a legal representative and recipient of child support receives the monies not in his own right, but in trust for the child).
[3] Note that some states refuse to permit laches as a defense for child support arrearages because they consider court-ordered child support an absolute debt which cannot be altered except by the court itself. See Annot., Laches Or Acquiesence As Defense So As To Bar Recovery Of Arrearages Of Permanent Alimony Or Child Support, 5 A.L.R. 4th 1015, § 4 (1981). Of course, this rationale would not apply to the instant case because here the claim for child support was not based on a court order.