**Carrie Ann CUCCIA, Petitioner/Appellee**

v.

**Salvatore Gerald CUCCIA, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Feb. 22, 1989.

Application for Permission to Appeal Denied by Supreme Court May 30, 1989.

Sabin R. Thompson, Nashville, for defendant/appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Stuart F. Patton, Asst. Atty. Gen., and Katie Griffin, Asst. Dist. Atty. Gen., Nashville, for petitioner/appellee.

TOMLIN, Presiding Judge (Western Section).

Petitioner, Carrie Ann Cuccia, brought this action under the Uniform Reciprocal Enforcement of Support Act (URESA) against respondent Salvatore G. Cuccia. The petition was filed in St. Tammany Parish, Louisiana and was forwarded to the Circuit Court of Davidson County, the residence of respondent, for a hearing under the statute. Following a hearing, the trial court entered judgment in favor of petitioner for the amount of arrearage plus interest due as of the date of trial. The trial court also ordered respondent to pay future child support. Respondent raises two issues on appeal: (1) Did the trial court lack subject matter jurisdiction due to the absence of a signature of a judicial officer on the order certifying the petition to Tennessee? (2) Did the trial court err in refusing to consider petitioner's alleged interference with respondent's visitation rights as a defense to the enforcement of a duty of support under URESA? In addition, during oral argument, this Court raised the issue of whether the court of a responding state in a URESA action could properly determine and order payment of any ar-

rearage accruing under a foreign divorce decree in the absence of a final judgment in the rendering state as to such arrearage. We resolve these issues in favor of petitioner and affirm.

Respondent and Petitioner were divorced in St. Tammany Parish, Louisiana in 1983. That court, considered the court of the rendering state, awarded petitioner custody of the parties' minor child and ordered respondent to pay $500 per month child support. In 1985, the decree was modified, reducing child support to $300 monthly and awarding petitioner a judgment against respondent for past-due support in the amount of $1,600. In July 1986, a second judgment was rendered in Louisiana against respondent for contempt, in the amount of $2,800, representing back child support. The record reflects Husband presently lives in Nashville, where he is employed as a Metro Nashville police officer.

The petition in the present case, filed in July 1987, alleges, "[s]ince on or about October 1984 defendant/respondent has refused or neglected to provide reasonable support for the above named dependants." At that time the alleged arrearage totaled $8,150. In addition to a judgment for the arrearage, petitioner's URESA action sought future child support in the amount of $300 per month. The petition was subsequently forwarded to the Davidson County Circuit Court Clerk.

At the hearing, the trial court calculated the arrearage as of the date of trial to be $9,950. Respondent attended the hearing and was represented by counsel, who attempted to introduce evidence as a defense to petitioner's claim for child support. He alleged petitioner's relocation with the child to the state of Kansas, without informing him of their whereabouts, deprived him visitation rights. The trial court refused to permit respondent to introduce such proof or make a tender of proof.

During the course of the hearing, respondent proved he was entitled to a credit of $1,850 toward any arrearage. The trial

court found respondent owed petitioner a duty of support in the amount of $300 per month and ordered timely payment of that amount in the future. The trial court also found respondent in arrears in the amount of $8,000 and ordered him to pay off that arrearage at the rate of $100 per month, plus interest at the rate of six percent per annum. The court awarded petitioner a lien on the parties' jointly owned property in Louisiana as security for the judgment.

## I. THE JURISDICTIONAL CLAIM.

The URESA petition's cover page was styled "CERTIFICATE AND ORDER." Stamped at the bottom thereof were the words "RESPONDING FILE COPY." The URESA petition as filed in the clerk's office does not bear the signature of a judge or presiding officer in the rendering state. Respondent contends this omission deprives the courts of this state subject matter jurisdiction. However, respondent cites no authority for his position. We are of the opinion this contention is without merit.

The rendering state's version of URESA is set forth in La.Rev.Stat.Ann. § 13:1641, et seq. Section 13:1688 thereof sets forth Louisiana's duty as the initiating state:

If the initiating court finds that the petition sets forth facts from which it may be determined that the obligor owes a duty of support and that a court of the responding state may obtain jurisdiction of the obligor or his property it shall so certify and cause three copies of the petition and its certificate and one copy of this act to be sent to the corresponding court. *Certification shall be in accordance with the requirements of the initiating state....* [emphasis added].

█ Inasmuch as Louisiana is the rendering or initiating state, the petition must be certified in accordance with that state's requirements. Since respondent did not raise this issue in the trial court, the record contains no evidence the petition was not properly certified in accordance with Louisiana requirements. At most, the omission is but a defect in petitioner's pleadings. Respondent could have and should have raised this oversight in the trial court. He did not, and therefore it is considered to be waived.

## II. VISITATION RIGHTS ISSUE.

### A. Interference with Visitation.

█ Respondent contends petitioner's failure to inform him of her and the child's whereabouts following their move from Louisiana to Kansas constitutes an interference with his visitation rights. He further argues the trial court should have considered this when setting the amount of the arrearage.

Other jurisdictions that have adopted URESA hold that the custodial parent's interference with the non-custodial parent's visitation rights cannot be raised as an equitable defense in a URESA action. *See, e.g., Todd v. Pochop,* 365 N.W.2d 559 (S.D. 1985); *England v. England,* 337 N.W.2d 681 (Minn.1983); *State ex rel. Hubbard v. Hubbard,* 110 Wis.2d 683, 329 N.W.2d 202 (1983); *County of Clearwater, Minn. v. Petrash,* 198 Colo. 231, 598 P.2d 138 (1979); *Carr v. Marshman,* 147 Cal.App.3d 1117, 195 Cal.Rptr. 603 (1983); *People ex rel. Hartshorn v. Hartshorn,* 21 Ill.App.2d 91, 157 N.E.2d 563 (1959).

Respondent cites no Tennessee case holding to the contrary and even states in his brief: "Tennessee courts have not yet allowed that defense in a URESA case such as this one which seeks to enforce a support obligation imposed by a non-Tennessee support order."

In enacting URESA, our General Assembly did not intend that the state's Attorney General be transformed into a private attorney representing a client in a divorce proceeding in which visitation and custody issues are in dispute. *See Todd v. Pochop,* 365 N.W.2d 559, 560 (S.D.1985). This principle was well expressed in *Hester v. Hester,* 59 Tenn.App. 613, 443 S.W.2d 28 (1968).

Our cases hold without exception that in cases like the present where the moth-

er having legal custody resides with the children in another state the courts of that state have jurisdiction to determine custody. [citations omitted]

Visitation rights are interwoven with the right of custody and, generally, should be left under the control of the court having jurisdiction to control custody.

*Id.* at 32.

Respondent's reliance upon *Wilson v. Bowman,* 622 S.W.2d 58 (Tenn.App.1981) and *Gossett v. Gossett,* 34 Tenn.App. 654, 241 S.W.2d 934 (1951) as authorities for his position on this issue is misplaced. In those cases the trial courts were the same courts which entered the divorce decrees. Thus, they retained complete jurisdiction over the parties. In the case before us, the trial court exercised only limited jurisdiction for the sole purpose of enforcing the payment of child support under the URESA statute.

By the same token, respondent's contention that this Court should extend the Supreme Court's holding in *Hoyle v. Wilson,* 746 S.W.2d 665 (Tenn.1988), to the case at hand is also without merit. In *Hoyle,* Tennessee was both the rendering state and the responding state under URESA. Our Supreme Court held when this state wears two hats—both as the rendering state and the responding state in the URESA action—the trial court does have discretion to refuse to enforce an order of support based upon the application of equitable principles. Again we note that in the present case Louisiana is the rendering state and Tennessee is only the responding state. This is a major factual difference that does not justify or permit application of the principle set forth in *Hoyle.*

B. The Denial of Equal Protection Claim.

■ Respondent claims he has been denied equal protection under the Constitution because defendants in support actions having their origin in Tennessee can raise the interference with visitation rights as a defense while he as a URESA defendant cannot. In support of his position, respondent cites *State, ex rel. Department of Social Services v. Wright,* 736 S.W.2d 84 (Tenn.1987). *Wright* was a paternity action in which the Court found use of URESA statutory procedures by out-of-state paternity petitioners unconstitutionally shifted the burden of persuasion on the ultimate issue to the defendant. The *Wright* Court stated: "URESA's purpose will not support, however, discriminatory treatment between URESA respondents and 'in-state' paternity defendants *before* the duty of support has attached." *Id.* at 86.

There are several distinctions between *Wright* and the case at bar. First, respondent's duty of support had already attached by virtue of the prior judicial determination in the Louisiana court. Next, in the case at bar the burden of proof was not shifted to respondent, nor did it have any impact on the outcome of the case. Under T.C.A. § 36–5–219(b) the introduction of the URESA petition in the court below created a presumption of the truthfulness of the facts contained therein. The respondent is then called upon to rebut the contents of the petition. The trial court did permit respondent to prove child support payments in the amount of $1,800, which was credited against the total arrearage. Respondent did not refute the remaining $8,000 due and owing petitioner by any proof. Furthermore, as stated in *Hoyle:*

Generally, under URESA, the sole issue for determination is enforcement of the support obligation previously established by an order of a court in a rendering State and no other issues can be raised by the respondent to a URESA petition in the court of the responding State.

746 S.W.2d at 668.

III. THE MATTER OF ARREARAGE.

■ The remaining issue was raised at oral argument by this Court. We questioned counsel for both parties as to wheth-

er the courts of this state, in a URESA action, could render judgment for arrearages claimed by petitioner but not reduced to judgment in the rendering or initiating state. Upon further consideration, we are of the opinion they can.

The General Assembly's expressed legislative purpose in enacting URESA was "to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." T.C.A. § 36-5-201. Our Supreme Court has declared URESA is remedial in nature and should be liberally construed with reference to the object sought to be obtained. *Martin v. Martin*, 213 Tenn. 345, 373 S.W.2d 609 (1963).

In the Act as passed by our legislature, a "duty of support" is defined as one that "includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance or otherwise." T.C.A. § 36-5-202(3). The very same Act defines a "support order" to be "any judgment, decree or order of support whether temporary or final, whether subject to modification, revocation or remission regardless of the kind of action in which it is entered." T.C.A. § 36-5-202(14).

Enforceable duties of support under our URESA statute are described in T.C.A. § 36-5-207 as follows:

> What duties are enforceable.—Duties of support applicable under this part are those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

As to the enforcement of support orders, T.C.A. § 36-5-220 reads in part as follows:

> Order of support—Enforcement.—(a) If the court of the responding state finds a duty of support, it may order the respondent to furnish support or reimbursement therefor and subject the property of the respondent to such order.

Furthermore, arrearages are included within the concept of "duties of support" that this state may enforce pursuant to a petition filed under URESA. *See* T.C.A. § 36-5-209(a).

In conclusion, it appears that the concerns of this Court are not well founded. Both this Court and the Supreme Court have applied the Tennessee URESA statutes so as to enter judgments for child support arrearages that had accrued under foreign orders of support, although the accrued arrearages had not then been reduced to judgment in the foreign or rendering state. *See Schmidt v. Schmidt*, 493 S.W.2d 720, 724 (Tenn.1973); *Rasnic v. Wynn*, 625 S.W.2d 278, 280 (Tenn.App. 1981); *Hester v. Hester*, 443 S.W.2d 28, 33 (Tenn.App.1968).

For the foregoing reasons, the judgment of the trial court is affirmed. Costs in this cause on appeal are taxed to the defendant, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.