627 A.2d 79

**Gilbert A. BLAND**

v.

**Carol A. LARSEN.**

**No. 1660, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

July 8, 1993.

Certiorari Denied Oct. 28, 1993.

Gilbert A. Bland, Columbia, argued for appellant.

Joseph B. Spillman, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before BISHOP, FISCHER and DAVIS, JJ.

BISHOP, Judge.

Appellee, Carol A. Larsen ("Larsen"), a Virginia resident, filed a Uniform Reciprocal Enforcement of Support Act ("URESA") Petition ("the Petition") in a Frederick, Virginia court against Appellant, Gilbert A. Bland ("Bland"), a Maryland resident. Larsen alleged that Bland owed $16,325 in arrearages of child support payments. The Virginia court transmitted the Petition to Maryland. The Circuit Court for Howard County referred the matter to a domestic relations master. After a hearing, both parties filed exceptions to the master's recommendations. The circuit court conducted a hearing on the exceptions, denied Bland's exceptions, and ordered Bland to pay Larsen $365 per month on arrearages of $14,750.

## Issues

Bland raises the following issues which we restate as follows:

I. Whether the court erred when it failed to apply equitable defenses available under Florida law.

II. Whether the court erred when it concluded that the action was not barred by laches.

III. Whether Bland's reliance on the advice of counsel is a valid defense to the action.

IV. Whether the court abused its discretion when it refused to apply the doctrine of unclean hands and bar Larsen's claim.

V. Whether the court had jurisdiction over Larsen's claim even though the Virginia court failed to certify the Petition.

## Facts

Bland and Larsen were married and had two children, Heather and Melissa. On May 2, 1978, a Florida court adjudged that the marriage was "irretrievably broken" and entered a Judgment of Dissolution of Marriage. The court ordered Bland to contribute $25 per week in child support and to forward all such payments to the clerk of the court. Later that year, a New York court awarded Larsen custody of Heather and Melissa. The court permitted Bland to visit the children on December 23 and 24, 1978, but left to the parties the responsibility of determining additional visitation, and if unable, requesting that the case be "re-calendared for further hearing."

At the hearing before the master, Larsen testified that, since the dissolution of their marriage, Bland paid only $850 in child support. Bland testified that he made other child support payments "early on," but his records of those payments, including cancelled checks, were lost while in storage over the last fourteen years. The payments Bland allegedly made in addition to the $850 were sent to the children directly; Bland did not make payments through the clerk of the Florida court.

Bland explained: "I, I, I don't make payments to Mrs. Larsen because she's an alcoholic and I, I'd rather not give her the money. 'Cause, ah, when the children were young, I used to give her money, and it never got to the children."

The master determined that Bland owed Larsen $16,725 in arrearages. Bland filed exceptions to the master's findings, challenging, *inter alia,* the master's failure to apply the defenses of laches, unclean hands, and good faith reliance upon counsel. Larsen challenged the master's determination of the amount of arrearages. The court set the proper amount of arrearages at $14,750, and denied Bland's exceptions.

Additional facts will be provided in the discussion, infra.

### *Discussion*
#### I

Bland argues first that the court erred when it failed to apply Florida law which, according to Bland, provides that the custodial parent's failure to allow the noncustodial parent visitation is a defense in an action based on arrearages of child support payments. We decline to pass on this issue.

Rule S74A(d) provides: "Within five days after recommendations are placed on the record or served pursuant to section c of this Rule, a party may file exceptions with the clerk. . . . Exceptions shall be in writing and shall set forth the asserted error with particularity. *Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise. "* (Emphasis added). This Court has reviewed carefully Bland's exceptions and the transcript of the exceptions hearing. Nowhere does it appear that Bland raised this issue in the circuit court. Bland contends that he submitted, at the hearing, "a lengthy brief citing many Florida case law precedents." Bland, however, did not include that "brief" in the record extract. *See* Rule 8–501(c). We cannot determine whether the brief was submitted during the evidentiary hearing or the exceptions hearing. Further, we cannot determine whether Bland's citations to Florida case law were provided in support of this argument, or in the context of

Bland's good faith reliance on counsel argument, discussed *infra*.

In its memorandum and order, the trial court stated that Bland "assert[ed] that he was denied visitation justifying non-payment under Florida law." The court concluded that the "law of Maryland is to the contrary." Although this indicates that the court did consider the issue, based on the record, we can only conclude that the court was referring to the issue in the context of Bland's good faith reliance on counsel argument. We conclude that Bland waived the issue of whether the court erred in not applying Florida law with respect to whether the failure to allow visitation is a defense to an action for child support arrearages.

Even if we were to consider the merits of Bland's contention, we would conclude that the court did not err. We explain.

"In determining whether and to what extent a duty of support is imposed or imposable [in a URESA action], ordinarily it is the law of the responding state, and not the law of the initiating state, which governs." *Virginia ex rel. Halsey v. Autry*, 293 Md. 53, 59, 441 A.2d 1056 (1982). Maryland law is clear that "the denial of visitation privileges may not be nonjudicially enforced by the other spouse's withholding of child support." *Stancill v. Stancill*, 286 Md. 530, 538, 408 A.2d 1030 (1979). In *Stancill*, the Court of Appeals also reviewed decisions of other state courts and concluded that "many of them have also denied the use of one parent's breach of the visitation privilege as a defense in an action based on arrearages of child support payments." *Id.* at 536, 408 A.2d 1030; *see also* M.L. Cross, Annotation, *Violation of Custody or Visitation Provision of Agreement or Decree as Affecting Child Support Payment Provision and Vice Versa*, 95 A.L.R.2d 118 (1964).

Bland nevertheless contends that the court should have applied Florida law because, until 1987, Bland resided in Florida and "governed himself according to Florida law." Florida law, however, is similar to Maryland law.

Bland cites *Department of Health & Rehabilitative Servs. ex rel. Soles v. Thomas,* 477 So.2d 1053 (Fla.Dist.Ct.App.1985), *review denied,* 488 So.2d 829 (Fla.1986), to support his position. The Court in *Thomas* declared that "the rule in Florida has always been that interference with visitation or custody rights is the classic example of [when] the court[ may exercise its] power to refuse to enforce payment of past due child support." *Id.* at 1056. The Court, however, explained that this general rule is inapplicable in a URESA action, "which specifically excludes consideration of visitation or custody from the duty of support." *Id.* The Court cited § 88.271 of the Florida Statutes, which provides in pertinent part: "The determination or enforcement of a duty of support owed to one petitioner [in a URESA proceeding] is unaffected by any interference by another petitioner with rights of custody or visitation granted by a court." Fla.Stat.Ann. § 88.271 (West 1987). Thus, under Florida law,

> the duty of the noncustodial parent to support a child is independent of the custodial parent's duty to permit visitation. The reason for the rule is that when visitation is denied, the noncustodial parent has numerous legal remedies to enforce the judgment. Sanctions include holding the custodial parent in contempt, and ordering a modification of custody.

*Hoffman v. Foley,* 541 So.2d 145, 146 (Fla.Dist.Ct.App.1989) (citations omitted); *see also Newbold v. Newbold,* 472 So.2d 543 (Fla.Dist.Ct.App.1985) ("The only matter that can be addressed in a [URESA proceeding] is that of support, and it is improper for the court in such a proceeding to condition support payment, or any portion thereof, on the custodial parent's compliance with orders governing visitation rights."). Accordingly, any alleged error on the part of the trial court when it failed to apply Florida law was harmless and does not require reversal. *See Harris v. David S. Harris, P.A.,* 310 Md. 310, 319, 529 A.2d 356 (1987) ("[T]he appellate courts of this State will not reverse a lower court judgment for harmless error: the complaining party must show *prejudice* as well as *error*.").

■ Bland also argues for the first time on appeal that the Florida court's order to pay child support is "defective on it's [sic] face and is unsupportable in any court." We shall decline to consider this contention. *See* Rule S74A(d); *see also* Rule 8–131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court...."). Bland's remedy, if any, was limited to challenging the validity of the decree in the Florida courts. Bland exercised none of his legal remedies either to compel Larsen to allow reasonable visitation with the children or to petition the Florida court to modify the 1978 child support order. After fourteen years of inaction and acquiescence, Bland cannot now attempt to avoid his obligation to provide support for his children.

## II

■ Bland next contends that Larsen's claim is barred by the doctrine of laches. Bland argues that Larsen's fifteen-year delay in bringing the action *sub judice* resulted in prejudice and placed him at a distinct disadvantage because Bland: (1) detrimentally relied on Larsen's acquiescence, re-married, and fathered two children to whom he must now provide support; and, (2) lost records of payments made toward his duty of support.

Laches has been defined as an "inexcusable delay, without necessary reference to duration, in the assertion of a right, and, unless mounting to the statutory period of limitations, mere delay is not sufficient to constitute laches, if the delay has not worked a disadvantage to another." *Bradford v. Futrell,* 225 Md. 512, 525, 171 A.2d 493 (1961). Thus, "[b]efore the defense of laches may be successfully invoked, two elements must be shown: (1) an undue lapse of time; and, (2) some disadvantage or prejudice to the party asserting the defense." *Weidner v. Weidner,* 78 Md.App. 367, 375, 553 A.2d 263 (1989). Assuming, without deciding, that the doctrine of laches may be applied as a defense in an action based on arrearages of child support payments, *but see Payne v. Prince George's County Dep't of Social Servs.,* 67 Md.App. 327, 338,

507 A.2d 641 (1986) ("Whether laches applies at all in a paternity proceeding for child support may be questioned. An infant who cannot legally bring suit himself or herself can scarcely be accused of lack of diligence."); *Green v. Green*, 44 Md.App. 136, 150, 407 A.2d 1178 (1979) ("it is one thing to penalize a person for sitting too long on his own rights; it is quite another to penalize [a dependent child] because someone else sat on those rights"), *rev'd*, 288 Md. 127, 415 A.2d 1131 (1980), we hold that, under the circumstances of this case, the court did not err when it refused to apply the doctrine.

As to Bland's first allegation of prejudice, we cannot find support for his assertion in the record. Although Bland testified that he has two children living with him now, he did not testify that he remarried and had additional children *because of* Larsen's inaction. In *Weidner, supra*, a URESA action for the enforcement of alimony, the appellant advanced a similar argument. There the appellant argued "that had he known that he would have been 'saddled' with a $12,660.00 debt at this time in his life, he would have modified his expenses over the past 19 years." 78 Md.App. at 375, 553 A.2d 263. We determined that the court did not err when it refused to apply the doctrine of laches because the appellant "offered no evidence which showed that he had changed his position *relying on the belief* that he was no longer responsible for alimony payments to his ex-wife." *Id.* (emphasis added). Bland's contention fails for the same reason.

As to the alleged loss of payment records, we again determine that the doctrine of laches is inapplicable. Bland admitted at oral argument having discontinued regular support payments in the early 1980's. Because the twelve-year statute of limitations under § 5–102(a)(3) of the Courts and Judicial Proceedings Article (1989) was applied in the case *sub judice*, the arrearages of child support the court awarded Larsen did not include any amount due Larsen before the early 1980's. Thus, there was no prejudice. Although Bland alleges that he complied with Larson's request that payments be made directly to her, he could have continued to pay support through the office of the clerk of the Florida court, and that court presum-

ably would have had a complete record of payments. Any inability to prove payments is due entirely to Bland's noncompliance with the court order. *Cf. Howell v. Brummell,* 293 Md. 646, 650, 446 A.2d 1149 (1982) ("Any prejudice that resulted from the absence of the two witnesses at trial was caused by the appellant's failure to subpoena or depose them. . . .").

### III

Bland contends that the court erred when it failed to consider his good faith reliance on counsel argument. Specifically, Bland maintains that: (1) his Florida attorney advised him that Larsen's alleged willful denial of visitation rights is a defense to an action based on arrearages of child support payments; and, (2) his good faith reliance on that advice is a defense to the action *sub judice.*

During the evidentiary hearing, Bland twice sought to introduce a letter his attorney wrote in 1987. That letter was addressed to Larsen's attorney, a carbon copy of which was sent to Bland. Bland's attorney wrote in pertinent part:

> The Florida Courts have held that the willful denial of a parties [sic] visitation rights is a defense to an enforcement of child support proceeding. . . . My client will begin making weekly child support payments as per the Final Judgment of Dissolution of Marriage only if he is allowed reasonable visitation with his daughters.

The master sustained Larsen's objections based on the hearsay rule. Thus, Bland's argument is predicated on a letter that was offered, but not admitted, into evidence.

 We shall not address the merits of this argument. Bland failed to preserve for appellate review the court's refusal to admit the letter into evidence; therefore, he also waived the underlying issue. *See* Rule 8–131(a). "If evidence of an out-of-court statement is objected to as hearsay, sustaining the objection will be proper unless the proponent of the evidence explains . . . that it is being offered for some legitimate purpose other than to prove the truth of the matter

asserted." *See* 5 Lynn McLain, *Maryland Practice* § 103.20 (1987). Bland presumably offered the letter not for the truth of the matters asserted, but for another purpose—to prove its effect on the reader, Bland. *See id.* § 801.9 ("Statements which are relevant because a particular person saw or heard them and are offered to prove their effect on the hearer or reader are nonhearsay. Many statements falling under this category are offered to show either notice to the person learning of the statement or the reasonableness of that person's actions in view of his or her learning of the statement."). Bland, however, could have also offered the letter to prove the truth of the matters asserted as they related to his conflict of laws analysis. Bland's failure to specify the limited purpose for which he offered the letter precludes further review. *See Ali v. State,* 314 Md. 295, 306, 550 A.2d 925 (1988) ("As early as 1843 our predecessors held that the party seeking to introduce hearsay evidence for [reasons other than to prove the truth of the matter asserted] had the burden of apprising the court of the limited basis upon which the offer was made."); *Braxton v. State,* 57 Md.App. 539, 549–50, 470 A.2d 1327 ("refusal to permit an answer to a question which on its face called for hearsay ... is not error where trial counsel fails to show that the purpose of the question is to elicit non-hearsay or evidence which would be considered as an exception to the hearsay rule"), *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984); *see also* Md.Fam.Law Code Ann. (hereinafter "FL") § 10–321 (1991) ("In any [URESA] hearing ..., the court is bound by the same rules of evidence that bind the courts of common-law jurisdiction in this State.").

Even if we were to consider the merits of Bland's contention, we would nevertheless affirm. Bland cites *Manown v. Adams,* 89 Md.App. 503, 598 A.2d 821 (1991), *vacated on other grounds,* 328 Md. 463, 615 A.2d 611 (1992), and *Derby v. Jenkins,* 32 Md.App. 386, 363 A.2d 967, *cert. denied,* 278 Md. 720 (1976). In *Manown,* we recognized that "reliance on an attorney's advice may, in a civil action, negate *wrongdoing* where the advice has been based on a full disclosure of the relevant facts." 89 Md.App. at 514, 598 A.2d 821 (emphasis

added). In that case, the "wrongdoing" in question was relevant to whether the trial court should have applied the doctrine of unclean hands. In *Derby,* we applied the good faith reliance on counsel defense in the context of a malicious prosecution action. We said: " 'Proof that [the defendant] placed the facts fully and fairly before his counsel and acted upon his advice is a good defense to the charge of want of probable cause.' " 32 Md.App. at 391, 363 A.2d 967 (*quoting Kennedy v. Crouch,* 191 Md. 580, 587, 62 A.2d 582 (1948)).

Bland suggests that this defense is equally applicable in the case *sub judice.* We disagree. Bland does not stand accused of "wrongdoing." Larsen only seeks to enforce through a URESA action Bland's duty to support their children. Larsen did not need to prove "wrongdoing" in the instant action. She had to prove only that Bland owes a duty of support and that that duty was not discharged through payment or otherwise. Accordingly, *Manown* and *Derby* are inapposite. We perceive no error.

## IV

Bland also argues that the trial court abused its discretion when it refused to apply the doctrine of unclean hands. Specifically, Bland refers to a discrepancy in Larsen's testimony—at first Larsen testified that she received only two $300 checks from Bland and later in the hearing she acknowledged that she also received an additional $250 check—and contends that Larsen's "knowingly false statements and claims" should bar her action. . Bland also makes allegations of perjury. Bland insinuates that Larsen's uncontroverted testimony that she earned $8,800 in 1991 was false. Bland determined after the hearing that the $8,800 represents her base pay as a waitress and contends that it is not possible that she did not receive additional income from gratuities. Further, he suggests that Larsen owned a 5.18 acre parcel of land in Virginia at the time she filed the Petition and failed to list that property as an asset in the "General Testimony" in support of the Petition.

Judge Harrell, writing for the Court in *Manown, supra,* aptly summarized the unclean hands doctrine:

The unclean hands doctrine refuses recognition and relief from the courts to those guilty of unlawful or inequitable conduct pertaining to the matter in which relief is sought. The doctrine is not for the protection of the parties to a lawsuit, but rather, for the protection of the courts—the idea being that judicial integrity is endangered when judicial powers are interposed to aid persons whose very presence before a court is the result of some fraud or inequity. The doctrine also serves another purpose which was stated long ago by the Court of Appeals in a case with facts parallel to this one:

The suppression of such illegal and fraudulent transactions is far more likely, in general, to be accomplished by leaving the parties without remedy against each other, and thus introducing a preventative check, than by enforcing them at the instance of one of the parties to the fraud[.]

*Roman v. Mali,* 42 Md. 513, 533–34 (1875). Thus, where there is evidence of willful wrongdoing in relation to the controversy before it, the doctrine allows a court to literally wash its hands of the affair, leaving the guilty party or parties to the consequences of their actions.

89 Md.App. at 511, 598 A.2d 821 (citations omitted) (alteration in original). We also recognized that "the question of whether the principle is to be invoked in a particular case rests in the sound discretion of the trial court." *Id. (citing Space Aero Prods. Co. v. R.E. Darling Co.,* 238 Md. 93, 120, 208 A.2d 74 (1965)).

We are unable to find support for Bland's allegations in the record extract, other than the discrepancy in Larsen's testimony regarding the receipt of payments. There is no indication that Larsen was guilty of "willful wrongdoing." As to Bland's allegations of perjury, mere bald allegations without evidentiary support will not be considered on appeal. *See* Rule 8–501(c); *Shell Oil Co. v. Ryckman,* 43 Md.App. 1, 4, 403 A.2d

379 (1979). Further, even if there is any merit to those allegations, it would appear that the alleged improper conduct was not the "source, or part of the source" of her URESA action, *i.e.*, it lacked the requisite nexus between the alleged misconduct and Bland's duty to support his children. *See Schneider v. Schneider*, 96 Md.App. 296, 624 A.2d 1319 (Md. Ct.Spec.App.1993) (the unclean hands doctrine applies only to those cases in which the "plaintiff's improper conduct is *the source, or part of the source, of his equitable claim*"); *Adams v. Manown*, 328 Md. 463, 475, 615 A.2d 611 (1992) ("an important element of the clean hands doctrine is that the alleged misconduct must be connected with the transaction upon which the claimant seeks relief"). Accordingly, the court did not abuse its discretion.

## V

Lastly, Bland contends that the court did not have jurisdiction over Larsen's claim, because the Virginia court failed to certify the Petition. Although the record reflects that the Virginia court, in fact, failed to certify the Petition, that defect does not render the judgment a nullity. The defect was not jurisdictional in nature; thus, Bland's failure to raise the issue below precludes him from raising the issue on appeal. *See* Rule 8–131(a). We explain.

"By the enactment of [the URESA], the Legislature showed a policy of liberality towards the enforcement in Maryland of the claims of non-resident [spouses] and children entitled to support." *Zouck v. Zouck*, 204 Md. 285, 300–01, 104 A.2d 573 (1954). "The Act has broad remedial purposes and, therefore, should be liberally construed." *Autry*, 293 Md. at 57, 441 A.2d 1056.

A URESA proceeding is commenced when a person to whom a duty of support is owed files a petition in a court of the initiating state, the state in which that person resides. *After determining that a duty of support [may] exist[ ], the* court in the initiating state forwards the petition to a court of the responding state, the state where the parent allegedly

owing a duty of support resides. The court of the respond-
ing state must obtain jurisdiction over the parent, hold a
hearing, and determine whether a duty of support exists,
and if so, the extent of that duty.

*Id.* at 58–59, 441 A.2d 1056 (emphasis added) (citations and
footnotes omitted). The determination that a duty of support
may exist is governed by FL § 10–313(a), which provides in
pertinent part:

If the court of this State acting as an initiating state finds
that the petition sets forth facts from which it may be
determined that the obligor owes a duty of support and that
a court of the responding state may obtain jurisdiction over
the obligor or the obligor's property, *the court shall so
certify* and shall have 3 copies of the petition and its
certificate ... sent to the court of the responding state.

(Emphasis added). The analogous provision in Virginia's
URESA is nearly identical to § 10–313(a). *See* Va.Code Ann.
§ 20–88.22 (Michie 1990). There is no question that the word
"shall" is mandatory in nature. The certification requirement,
however, is not a jurisdictional prerequisite.

The issue before us is one of first impression in Maryland;
we have uncovered only one other appellate court decision on
point. In *Cuccia v. Cuccia,* 773 S.W.2d 928 (Tenn.Ct.App.),
*application for permission to appeal denied,* (Tenn.1989), the
Court of Appeals of Tennessee held that an initiating state
court's failure to certify a URESA petition does not deprive
the responding state court of subject matter jurisdiction. "At
most, the omission is but a defect in petitioner's pleadings.
Respondent could have and should have raised this oversight
in the trial court. He did not, and therefore it is considered to
be waived." *Id.* at 930. We agree with the reasoning of the
*Cuccia* Court.

The certification requirement requires the judge or judicial
officer of the initiating state to do nothing more than review
the petition and supporting affidavits and make a determina-
tion of whether "it *may* be determined that the obligor owes a
duty of support and that a court of the responding state *may*
obtain jurisdiction over the obligor or the obligor's property."

FL § 10–313(a) (emphasis added); *see also* Va.Code Ann. § 20–88.22 (Michie 1990). Thus, certification is in the nature of a probable cause determination—the court merely determines whether it is *warranted* to transmit the petition to the responding state. Certification does not confer jurisdiction upon the responding state; rather, jurisdiction in Maryland is established under FL § 10–310, which provides: "Jurisdiction of all civil enforcement proceedings under this subtitle is vested in the circuit court for any county and juvenile courts having jurisdiction over the enforcement of laws respecting duties of support."

■ We do not, by any means, intend to minimize the importance of the certification requirement. The judge or judicial officer of the initiating state plays a vital role in ferreting out frivolous or unsupported URESA petitions. If the petition is not certified, the responding state court may dismiss the petition or require that the initiating state court certify the petition *nunc pro tunc* before proceeding further. But the onus is on the obligor to bring to the attention of the responding state court the fact that the petition is uncertified. Bland could have raised this oversight below, but did not. Therefore, we deem the issue waived.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**